Fred Mouser v. John A. McInteer, et al.

**Conveyance of Real Estate.**

Where one sells and conveys real estate, being one hundred ten acres, even if the parties talked about the adjoining seven and one-half acres as part of the boundary, if in fact said tract is not a part of the written description, and the grantee received in excess of the one hundred ten acres, the conveyance can not be construed to have included the seven and one-half acres unless some fraud or mistake be legally shown and the contract reformed accordingly.

APPEAL FROM HART CIRCUIT COURT.

April 8, 1884.

Opinion by Judge Hargis:

There is no allegation or proof of mistake in the deed from Mouser to Vaughn executed April 24, 1877, for the one-hundred-ten-acre tract of land which Mouser previously bought from E. L. Bale. According to the survey made by Cobb at the instance of Mouser the boundary contained one hundred twenty-one acres and sixty-one and one-half poles. The configuration of Cobb's survey is precisely the same as that made for Vaughn by W. A. Marshall, who testifies that the boundary, excluding the seven and one-half acres in controversy which Mouser sold to McInteer, contains one hundred eleven acres, three roods and seventeen poles. It is, therefore, clearly shown that Vaughn has in his possession under his deed from Mouser more than one hundred ten acres, which was the quantity bought by him from Mouser.

The lands of the heirs of Eubank lie on the east of the tract for the distance of fifty-eight and one-half poles from figure seventeen in the direction of figure sixteen on Cobb's survey, and from figure six towards figure five on Marshall's survey; consequently the descriptive portion of Mouser's deed to Vaughn "east by the land of Eubank's heirs" does not cover the seven and one-half acres which intervene before figure sixteen on the one survey and figure five on the other are reached, and it is bounded on the east by S. W. Thompson's land from "B. to A." on diagram marked seven and one-half in the center. Thus it is clear that a part of the eastern boundary of the one hundred ten acres was never covered by the

lands of Eubank's heirs, who did not at any time own the seven and one-half acres. This position is made conclusive by the fact that their line runs from "C to B" and thence due east from "B" so that the eastern boundary of the seven and one-half acres can not be upon the lands of Eubank's heirs. The seven and one-half acres were not deeded to Mouser until after he sold and conveyed the one hundred ten acres to Vaughn, and when it was conveyed to him, the conveyance was by the Hares in consideration of a portion of land which Hare had cut off from Mouser in running a division line between Hare, Thompson and Maxey.

The boundary of the one hundred ten acres set forth in Mouser's deed to Vaughn does not embrace the seven and one-half acres, and as neither fraud nor mistake in the deed is alleged or proved we do not see how Vaughn can be adjudged this seven and one-half acres to which Mouser did not have the legal title when he made the deed and which has since been conveyed to Mouser and sold by him to McInteer. There is no written memorandum or writing whatever that Mouser sold the seven and one-half acres to Vaughn, and the proof of the verbal admissions, conceding he made them, is not sufficient to evidence such a sale. The parties may have talked of the seven and one-half acres as part of the boundary, but if in fact they are not part of the written description they can not be construed or proved into the conveyance unless some fraud or mistake be legally shown and the contract reformed. Nothing of this kind was attempted below, and as Vaughn has his full number of acres and might not be able in equity to hold the excess the seven and one-half acres would make, were they included in his deed, it seems to us that the court should have adjudged against Vaughn's claim to the seven and one-half acres and decreed a sale thereof in behalf of Mouser to pay the remainder of the purchase-money due him by McInteer.

Wherefore the judgment is *reversed* and cause remanded with directions to render judgment according to the principles of this opinion.

*H. C. Martin, for appellant.*

*D. Hudson, for appellees.*